NicholsoN, C. J.,
delivered the opinion of tbe Court.
Plaintiff sued defendant for the value of a mule, alleged to have been taken from him in 1863, by a squad of guerillas, of whom defendant was the guide and pilot; and, also, for the value of the mule, which plaintiff alleges defendant promised to pay.
Defendant relies upon the defense that he was the guide and pilot of the guerillas by coercion and force, and that he promised to pay for the mule under fear, produced by threats of military coercion, made by a brother of plaintiff, who had command of a military force.
The cause was tried by three juries, all of which found verdicts for the defendant. From the judgment rendered on the last verdict, plaintiff has appealed to this Court.
The charge of the Circuit Judge was unexceptionable, and there is sufficient evidence to sustain the verdict, if all the evidence allowed to go to the jury was legal.
It appears in proof, that, after the mule was taken from plaintiff, his brother, who was in command of a military force at Carthage, wrote a letter or order, addressed to defendant, threatening him with summary punishment, if he did not pay to plaintiff $125 for the mule. This letter was handed to plaintiff, and by him conveyed to defendant.
On the trial, defendant offered to prove the contents of the letter or order; and, to lay grounds for so doing, he made an affidavit, in which he stated that “plaintiff handed to him an order, made by F. M. Anderson, who *655 held some military official position at Carthage, at the time. Said order required defendant to pay for the mule in controversy, and was handed to affiant by plaintiff, not long after the mule was takep; but affiant, because he was threatened in said order with personal violence, if he did not pay for said mule, left home and went out of the country, and left the order at his home, and the same can not now be found. He is informed and believes that his wife destroyed the same in his absence. He stated, further, that, since the last term of the Court he has diligently searched in his house, among his books and papers, for the order from Anderson, and has been unable to find it, and he verily believes the same is destroyed. He has been anxious to find the same; has often talked to his wife as to the certainty of its destruction, and she always assured him she burned it up; but, thinking there might possibly be some mistake about the matter, he has, as before stated, made diligent search, in good faith, to find the same, and failed. The destruction of the paper was without affiant’s knowledge or procurement.”
"Whether secondary evidence can be received or not, is a preliminary question, to be determined by the presiding Judge. He must determine from the proof, whether there is a reasonable presumption that the paper has been lost. If there be no ground of suspicion that the paper is suppressed, ordinary diligence to produce it will be deemed sufficient; and what is proper diligence, must depend much upon the circumstanced of the case. Tyree v. Magness, 1 Sneed, 276. Hence, before secondary evidence can be admitted as to the contents of a lost paper, the evidence, of the person who was the proper custodian of it, *656 as to its loss, must be adduced. Iu this case, defendant received the letter from plaintiff, and, therefore, would be the custodian of it. He states, that when he left the country, on account of the threat contained in the letter, he left it at his house. He does not say that he left it in the custody of his wife, but left it in his own house. He states that he has searched diligently for it, and that he has been unable to find it. He says his wife informed him that she destroyed it. He further states that he was anxious to find it, and that, if destroyed, it was not done with his knowledge or procurement. As it does not appear that defendant’s wife was charged with the custody of the letter, and as we can see no ground of suspicion that the paper has been suppressed, we think the Circuit Judge exercised his discretion properly, in allowing the contents of the letter to be proven.
It is next insisted, that the Circuit Judge erred in refusing to permit plaintiff to introduce witnesses to prove that Drury Smith, a witness for defendant, was incompetent, on account of his disbelieving in a God, or in a state of future rewards and punishments. This objection was made to the competency of the witness when he was first introduced, at which time plaintiff offered to call witnesses to prove his declarations as to his want of religious belief. The Court overruled this motion, and directed the counsel to examine the witness touching, said incompetency. Thereupon the counsel asked him, if he had not said to.Lucinda Smith and George Kinnard, that there was no more God or' Devil than in the palm of his hand, which witness denied; and if he believed in a future state of rewards and punishments, and if he be *657 lieved in a God. To these last named questions, as to his belief, the record does not show that the witness made any answer. Thereupon plaintiff’s counsel proposed to call Lucinda Smith and George Kinnard, to prove the fact that witness had made said statements, in order to establish his incompetency. The Court overruled the motion, 'and ruled that said witnesses could only be called to contradict the witness, and not with a view of establishing his incompetency by showing his disbelief in a God, or future state of rewards and punishments; and the Court ruled that the plaintiff must first fix the time and place. It seems, from the record, that Lucinda Smith and George Kinnard were not examined. The Court ruled that witness, Drury Smith, was competent, and directed the counsel of defendant to examine him, which was done, over the objections of plaintiff’s counsel.
This exact question arose in the case of Harrel v. The State, 1 Head, 125. In that casp, after alluding to the conflict in the authorities as to the mode of making proof of the incompetency of a witness in such cases — whether by examination of the witness himself, or by proof of his declarations to other persons — Judge McKinney said: “We have held recently, in a case not reported, that the party seeking to exclude a witness on this ground may adopt either mode of proof ; and we adhere to this determination, as the better practice. If the witness really disregards the obligation of an oath, it would seem to be neither safe nor consistent to resort to his examination. If he has voluntarily avowed his disbelief, we perceive no reason why this should not be proved in the same manner as any other fact.”
*658 Upon this authority, which we adopt as laying down the best rule of practice, the Circuit Judge erred in not permitting plaintiff’s counsel to call witnesses to prove the declarations of Drnry Smith, as to his disbelief in a God, and- in a state of future rewards and punishments, and in requiring him to resort to the examination of the witness himself. The record shows the evidence of Drury Smith to have been material on the issue before the jury. For this error the judgment is reversed, and the cause remanded for another trial.